FILED

2020 Jul-07  PM 02:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **TA'SHA PARKS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 5:20-CV-388-CLS** |
| | ) | |
| **MUTUAL OF OMAHA INSURANCE** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This action was commenced on March 20, 2020. The plaintiff's complaint asserts claims against Mutual of Omaha Insurance Company for Breach of Contract (Count One), Bad Faith (Count Two), Fraud (Count Three), Intentional Infliction of Emotional Distress (Count Four), Suppression (Count Five), and Negligent Misrepresentation (Count Six). *See* doc. no. 1 (Complaint). The case now is before the court on defendant's motion to dismiss Counts Three through Six for failure to state a claim upon which relief can be granted. *See* doc. no. 6 (Motion to Dismiss), and Fed. R. Civ. P. 12(b)(6).

Plaintiff's response concedes that the claims alleged in Counts Three, Five, and Six of her complaint should be dismissed. *See* doc. no. 12 (Response to Motion to Dismiss), at 1. Accordingly, the remainder of this opinion addresses whether Count

Four, asserting a claim for the intentional infliction of emotional distress — often referred to in Alabama cases as "the tort of outrage"[1] — also should be dismissed.

## I.  STANDARDS OF REVIEW

The relevant portion of Federal Rule of Civil Procedure 12 permits a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  That rule must be read together with Rule 8(a), which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  As the Supreme Court stated in *Iqbal*:

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  [*Twombly*, 550 U.S. at 555].  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id.* at 557.

---

[1] Under Alabama law, an action for the intentional infliction of emotion distress and the so-called "tort of outrage" are conceptually deemed to be synonymous.  *See, e.g.*, *Ex Parte Lumbermen's Underwriting Alliance*, 662 So. 2d 1133, 1134 (Ala. 1995) (recognizing that intentional infliction of emotional distress is "otherwise known as the tort of outrage"); *Sanders v. Shoe Show, Inc.*, 778 So. 2d 820, 823 (Ala. Civ. App. 2000) (same); *see also Sphere Drake Ins., P.L.C. v. Shoney's, Inc.*, 923 F. Supp. 1481, 1491 (M.D. Ala. 1996) (stating that, under Alabama law, the tort of outrage and the intentional infliction of emotional distress are "the same cause of action").

To survive a motion to dismiss [founded upon Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id.* at 570.   A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556.   The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.*  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557 (brackets omitted).

Two working principles underlie our decision in *Twombly*. *First*, the tenet that a court must accept as true all of the allegations contained in a complaint is *inapplicable to legal conclusions*.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Second*, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 556.  Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d at 157-58.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they

are no more than conclusions, are not entitled to the assumption of truth. While *legal conclusions* can provide the framework of a complaint, they must be supported by factual allegations. *When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief.*

*Iqbal*, 556 U.S. at 678-79 (emphasis supplied, second and fourth alterations in original, other alterations supplied).

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff, Ta'Sha Parks, is the granddaughter of, Ruthie Clayton, deceased. Ms. Clayton purchased an accidental death policy from defendant, Mutual of Omaha Insurance Company, during 2006, while she was residing in Santa Rosa, California.[2] Plaintiff was named as beneficiary of that policy.[3]

Sometime after that event, Ms. Clayton moved to Alabama, "to be near to Plaintiff, so that Plaintiff could assist with her care," including the performance of "almost all of Ms. Clayton's housework and shopping," and driving her to "dialysis treatments three times a week."[4]

On approximately October 24, 2016, Ms. Clayton slipped while stepping out of her bathtub. "She attempted to catch herself by grabbing Plaintiff's arm, but she

---

[2] *See* doc. no. 1 (Complaint), at ¶¶ 6-7 & 10.

[3] *Id.* ¶ 2.

[4] *Id.* ¶¶ 11-13.

4

slid and hit the back of her head."[5]   Even so, she appeared to be unharmed and, consequently, no medical attention was sought or received.[6]

Seven days later, on October 31, 2016, "Ms. Clayton fell from an unstable toilet and hit her head again."[7]   Plaintiff was not present, and was not informed of the incident at that time.[8]

The following morning, however, "Ms. Clayton appeared to be suffering from an altered mental status [during her November 1, 2016] dialysis appointment."[9]   She was sent to the hospital, where a "CT scan revealed she had an acute subdural hematoma in her right temporal area."[10]   "Ms. Clayton's condition continued to deteriorate, and she slipped into a coma soon after" her admission to the hospital.[11]   "The medical records repeatedly noted Ms. Clayton's fall and that she was admitted due to 'status post fall.'"[12]   She passed away on January 7, 2017.[13]   Plaintiff filed a

---

[5] *Id.* ¶ 14.

[6] *Id.*

[7] Doc. no. 1 (Complaint), at ¶ 15.

[8] *Id.* (Ms. Clayton "was with her great-grandson's girlfriend at the time, and Plaintiff was not informed.").

[9] *Id.* ¶ 16 (alteration supplied).

[10] *Id.* ¶¶ 16-17.

[11] *Id.* ¶ 18.

[12] *Id.* ¶ 19.

[13] Doc. no. 1 (Complaint), at ¶ 21.

timely claim under the accidental death policy on February 22, 2017.[14]

Defendant conducted "a cursory investigation that primarily involved obtaining the opinion of a forensic pathologist," whose report on the cause of Ms. Clayton's death allegedly "made little sense, even from a layperson's perspective."[15] Defendant then denied benefits "based upon a finding that illness rather than injury caused Ms. Clayton's death."[16]

Plaintiff obtained legal assistance, filed an appeal, and provided additional evidence, including the opinion of one of Ms. Clayton's treating physicians who "confirmed that [her] fall was what led to her death."[17] Even so, defendant once again denied the claim on November 20, 2019, concluding that illnesses (*i.e.*, "Ms. Clayton's weakened state, her anti-coagulation medicine, and her need for dialysis") were the true cause of her death.[18] That decision was based in part upon the opinion of a neurosurgeon who "conceded it was 'possible that the traumatic events contributed to the development of the acute subdural hematoma.'"[19] That neurosurgeon's report also "cited authority acknowledging that an acute subdural

---

[14] *Id.* ¶ 23.  The policy required that proof of loss was due within 90 days of the policy holder's death:  *i.e.*, in this case, no later than April 7, 2017.  *Id.* ¶ 22.

[15] *Id.* ¶¶ 25-26.

[16] *Id.* ¶ 27.

[17] *Id.* ¶ 29.

[18] Doc. no. 1 (Complaint), at ¶ 30.

[19] *Id.* ¶ 32.

hematoma is the result of traumatic injury in 94-98% of cases."[20]

Plaintiff asserts that defendant "unnecessarily accused [her] of lying about Ms. Clayton's fall to obtain an insurance payment."[21]   Plaintiff characterizes such accusations as "callous speculation concerning [her] motivations [and] unwarranted," and alleges that they "caused significant emotional harm."[22]

## III.  DISCUSSION

The essence of plaintiff's claim for intentional infliction of emotional distress is stated in the following paragraphs of her complaint:

> 59.    Defendant's repeated assertions that Plaintiff and her family falsified the circumstances of Ms. Clayton's death were unnecessary and unwarranted.

> 60.    Defendant's libelous attacks were aimed at concealing its own desire to avoid honoring its contract with Ms. Clayton.

> 61.    Defendant's actions were outrageous and beyond the bounds of acceptable conduct in a civilized society.

> 62.    Defendant intended to or reasonably could foresee that their actions would cause a reasonable person serious emotional trauma.

> 63.    Defendant caused severe and serious emotional distress to Plaintiff.

> 64.    Defendant is liable to Plaintiff for the tort of outrage under

---

[20] *Id.* ¶ 33.

[21] *Id.* ¶ 31.

[22] *Id.* ¶ 36.

Alabama law.[23]

Doc. no. 1 (Complaint), ¶¶ 59-64 (footnote supplied).

Defendant argues that plaintiff's claim for outrage should be dismissed because, "[a]s a matter of law in Alabama, the facts alleged in the complaint do not and cannot constitute outrage."[24]

The first issue that must be addressed is whether Alabama law is correctly applied to plaintiff's claim of intentional infliction of emotional distress. Her complaint asserts that, due to "Alabama's strict adhere to *lex loci contractus*, California law applies to [the accidental death] policy and its interpretation."[25] Despite that, plaintiff pled her claim for intentional infliction of emotional distress under Alabama law.[26] As noted by defendant in its motion to dismiss,[27] Alabama applies the principle of *lex loci delicti* to torts claims, so Alabama law applies to the claim for intentional infliction of emotional distress since plaintiff was in Alabama when she received the decision from defendant including the accusations that allegedly caused her emotional distress. *See, e.g.*, *Morse v. Life Insurance Co. of North America*, 399 F. Supp. 3d 1236, 1246 (N.D. Ala. 2019 ("For tort claims,

---

[23] See note 1, *supra*.

[24] Doc. no. 6 (Motion to Dismiss), at 8.

[25] Doc. no. 1 (Complaint), ¶ 9.

[26] *See id.* ¶ 64 ("Defendant is liable to Plaintiff for the tort of outrage under Alabama law.").

[27] *See* doc. no. 6 (Motion to Dismiss), at 5 n.3.

Alabama applies the doctrine of *lex loci delicti*, which provides that the law of the state where the injury occurred governs the injured party's substantive rights.").

To establish such a claim, regardless of whether it is characterized as either a "tort of outrage" (as plaintiff describes it in paragraph 64 of her complaint, *supra*), or as an action for the intentional infliction of emotional distress, a plaintiff must demonstrate: "(1) that the defendants either intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from their conduct: (2) that the defendants' conduct was extreme and outrageous; and (3) that the defendants' conduct caused emotional distress so severe that no reasonable person could be expected to endure it." *Callens v. Jefferson County Nursing Home*, 769 So. 2d 273, 281 (Ala. 2000) (citing *Jackson v. Alabama Power Co.*, 630 So. 2d 439 (Ala. 1993), and *American Road Service v. Inmon*,  394 So. 2d 361 (Ala. 1980)).

The Alabama Supreme Court historically has recognized such tort claims only in "egregious circumstances," such as wrongful conduct within the context of family burials, an insurance agent's coercion of an insured into the settlement of an insurance claim, and egregious sexual harassment. *Callens*, 769 So. 2d at 281 (citing *Thomas v. BSE Industry Contractors, Inc.*, 624 So. 2d 1041 (Ala. 1993)). Nevertheless, the Alabama Supreme Court has "not held that the tort of outrage can exist in <u>only</u> those three circumstances." *Wilson v. University of Alabama Health*

*Services Foundation, P.C.*, 266 So. 3d 674, 677 (Ala. 2017) (emphasis in original); *see also O'Rear v. B.H.*, 69 So. 3d 106, 118-19 (Ala. 2011) (allowing an outrage claim when a family physician engaged in a homosexual relationship with a minor patient, and, provided narcotic medication to the minor despite indications that he was developing addictive tendencies).

Plaintiff argues that defendant's "monetary motivations" in this case are identical to those of the defendant in *Travelers Indemnity Co. of Illinois v. Griner*, 809 So. 2d 808 (Ala. 2001), in which the Alabama Supreme Court found the trial court properly denied defendant's motion for a directed verdict where defendant had wrongfully withheld authorized medical treatment for over five years, knowing that it would cause plaintiff pain and hardship, and in an attempt to force a favorable settlement.[28]   *Griner* falls under the second category of outrageous conduct recognized by the Alabama Supreme Court:  an insurance agent's coercion of an insured into an agreement to settle an insurance claim.  *See also Continental Casualty Insurance Co. v. McDonald*, 567 So. 2d 1208 (Ala. 1990) (finding outrageous conduct where insurer withheld payment for authorized medical services for over five years in order to coerce a minimal settlement).  The *McDonald* case has been recognized as "the minimum threshold that a defendant must cross in order to commit

---

[28] Doc. no. 12 (Response to Motion to Dismiss), at 3.

outrageous conduct." *See IT Specialty Risk Services, Inc. v. Barr*, 842 So. 2d 638, 644 (Ala. 2002) (internal citations omitted).

Plaintiff also argues that the inquiry is fact-intensive and, therefore, that defendant's motion to dismiss is premature.[29]  While outrage claims can be dismissed at this stage of litigation,[30] this court agrees that, in this instance, the facts need to be developed before pronouncing a decision on this claim.  *See Swain v. AIG Claims, Inc.*, No. 2180336, 2019 WL 5284748, at *7 (Ala. Civ. App. Oct. 18, 2019) ("[T]he question whether a plaintiff has met the burden of proof sufficient to support a tort-of-outrage claim  .  .  .  is typically appropriately addressed at the summary-judgment stage rather than at the pleading stage.").  Plaintiff's allegations could cognizably fall within the second category of outrageous conduct recognized by the Alabama Supreme Court:  an insurance agent's coercion of an insured into a settlement of an insurance claim.  For that reason, it is too early to dismiss plaintiff's outrage claim, and defendant's motion is due to be denied.

## IV.  CONCLUSION

In accordance with the foregoing, defendant's partial motion to dismiss is

---

[29] *Id.*

[30] *See Leeth v. Athens/Limestone Hospital, Inc.*, CV 07-B-0956-NE, 2009 WL 10688796, at *2 (N.D. Ala. July 23, 2009) (quoting *Carter v. Harris*, 64 F. Supp. 2d 1182, 1194 (M.D. Ala. 1999)) ("The determination as to whether 'evidence is sufficiently extreme or outrageous to support a cause of action for [outrage] is for the trial court to make as a matter of law.").

GRANTED in part and DENIED in part.  It is ORDERED that Counts Three, Five,

and Six are DISMISSED with prejudice.  The motion is DENIED as to Count Four,

and the action remains pending on the claims asserted in Counts One, Two, and Four.

    **DONE** and **ORDERED** this 7th day of July, 2020.

_____
Senior United States District Judge